13 So.2d 424

### BLAKENEY v. STATE.

2 Div. 708.

Court of Appeals of Alabama.

Nov. 24, 1942.

Rehearing Denied Dec. 15, 1942.

Reversed on Mandate May 11, 1943.

Geo. O. Miller, of Livingston, and Mc-Queen & McQueen, of Tuscaloosa, for appellant.

Wm. N. McQueen, Atty. Gen., and Bowen W. Simmons, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

The appeal is from a conviction of grand larceny.

The indictment avers that "Allan G. Blakeney, alias Allen G. Blakeney whose name is otherwise unknown to the Grand Jury, feloniously took and carried away, to-wit, 17 cows or animals of the cow kind, the personal property of William A. Ganguet * * * against the peace and dignity of the State of Alabama." This , charges in substantial language the offense proscribed by the statute (Code 1940, Title 14, Section 331) and follows the prescribed statutory form (Code 1940, Title 15, Section 259, No. 66).

The interposition of to-wit preceding the figure, 17, denoting the number of cows allegedly stolen, in no way impairs the validity of the indictment. This for the reason that the number of cows or animals of the cow kind stolen is immaterial to the crime. The felonious taking and asportation of one such animal (or more) constitutes grand larceny. The argument is therefore unconvincing that the indictment is rendered vicious by the interposed videlicet aforesaid.

This is a companion case· of May v. State, Ala.App., 6 So.2d 521,[1] already reviewed by this court. If the present appellant was a conspirator with May in the theft of the cattle, then what we said in the May case applies here, viz.:

"This appellant [May] and one Sid Portis (also indicted but not on trial) went upon the lands ˉor property of William A. Ganguet, the alleged injured party, and drove 17 head of Ganguet's cattle from his pasture into a loading pen, and fastened the said cattle therein. Mr. Ganguet received some information about his cattle having been penned up, and went down to the pen on the day he received the information, found his 17 head of cattle penned up, and he thereupon opened the gates to the pen and liberated his cattle by turning them back into his pasture. The foregoing facts, as stated, were without dispute or conflict.

"The essential and controlling element was the intent of the defendant in driving up and penning the cattle as aforesaid. If the defendant committed said act with a felonious intent to deprive the rightful owner of his property, the offense complained of is complete. If, on the other hand, his actions in driving up and penning the said cattle were innocent and free from any felonious intent, as he strenuously insisted, he was guilty of no wrong, hence should not have been convicted. The determination of this crucial point of decision rested with the jury, and from all the evidence adduced upon the trial·the jury was under the duty to consider and decide this question."

The conviction of May has been affirmed. His claim of innocence of felonious intent, as is the appellant Blakeney's, was that he (May) had purchased the cattle for Blakeney from two negro women named Brown, taking bills of sale therefor and delivering the sale papers to Blakeney; that he thought the Brown women owned the cattle and was innocent of any wrongdoing when he impenned Ganguet's· cattle.

The impounding of the cattle was upon the instructions of Blakeney, the present appellant, when a cattle buyer from Montgomery was negotiating with him to purchase them. The State contended—and such was the tendency of its evidence—that there was an agreement or conspiracy between Blakeney and May (and perhaps others) to engage in such unlawful acts, and that May was acting in furtherance of the objects of the conspiracy in penning up the cattle. If so, then Blakeney would be as guilty as May, even though not present when the actual larceny was perpetrated. Cantrell v. State, 29 Ala.App. 614, 199 So. 742; Prophett v. State, 25 Ala. App. 20, 141 So. 257, certiorari denied 224 Ala. 584, 141 So. 258.

The transaction to sell the cattle to the Montgomery buyer was never effected and, as stated, the owner of the cattle later found them in the pen and released them. Able counsel, in forceful argument, urge that inasmuch as the sale of the cattle was never consummated and apparently abandoned (temporarily at least) that complete asportation was never effectuated, that therefore the larceny was never carried out, and the defendant was entitled to the affirmative charge. Such a view is not supported by the authorities.

█ If the prospective thief shall have obtained at some particular time the complete, independent and absolute possession and control of the chattel, adverse to the rights of the owner therein, the taking is complete. 36 C.J., p. 748, Section 45(3).

"If the possession and control of the taker becomes absolute at any moment, the duration of his power over the thing is immaterial. If it is exercised even for the smallest appreciable length of time the taking is complete and effectual, although the thief immediately abandons or returns the thing, or instantly loses possession of it." 36 C.J., p. 749, Section (47) cc; Lockhart v. State, 6 Ala.App. 61, 60 So. 591.

█ And to constitute an asportavit, or carrying away of the cows, it is not necessary that they should have been removed from the owner's premises. The act of asportation is complete when the property taken is moved from its original position regardless of however slight may be the change of position. 36 C.J., pp. 749, 750, Section 48(b), Section 49 bb. Also see Idem. p. 750, Section 51(2)

As held in the May case, the evidence was sufficient to establish the fact of larceny. The remaining element of proof necessary to establish the corpus delicti in the present case was the accused's guilty connection with or participation in the crime. And as to this, there were certain incriminating facts and circumstances offered from which the jury might correctly infer guilt.

█ It is of course axiomatic that the corpus delicti may be proven by circumstantial evidence. 6 Alabama Digest, Criminal Law, ☞ 563; 23 C.J.S., Criminal Law, § 916 c, p. 185.

█ Furthermore, in conspiracy trials great latitude must be allowed the State in producing its evidence. 15 C.J.S., Conspiracy, § 92 b, p. 1141. Nor is it objectionable that the evidence covers various transactions or extends over a considerable period of time or that "the acts, evidence to show which is offered, occurred some time before the alleged formation of the conspiracy, or after its termination, provided, however, that the facts shown have some bearing on and tendency to prove the ultimate fact at issue." 15 C.J.S., Conspiracy, § 92 b, p. 1143; Morris v. State, 17 Ala.App. 126, 82 So. 574.

█ It is further declared that in such cases collateral facts (pertinent to the issue) with which the accused was connected are relevant to show intent, purpose, design or guilty knowledge. 15 C.J.S., Conspiracy, § 92 e, p. 1145; Morris v. State, supra.

Measuring the evidence by these well-known rules, we must and do hold that the corpus delicti was substantially proven by legally admissible testimony.

█ The foregoing authorities also demonstrate the soundness of the ruling of the trial court in permitting proof that after the alleged theft of the cattle the defendant was caught by an officer of the law in proximity to the pasture from which May had taken the cattle and that several negroes, including May, were in the pasture at that time and, when they saw the officer, fled therefrom to the defendant's car, where the defendant was waiting for them. This was a collateral fact clearly related to the transaction at issue and with which this defendant was connected, and bore probatively upon his "intent, purpose, design or guilty knowledge."

█ The voluntary incriminatory statements of the defendant made at this

time or later in connection therewith were also relevant as admissions against interest, Dawkins v. State, 20 Ala.App. 54, 100 So. 619; Hewitt v. State, 20 Ala.App. 379, 102 So. 489, and as indicating a consciousness of guilt. Any act, conduct or declaration of the accused relating to the offense and indicating such consciousness of guilt is provable against him. Palmer v. State, 15 Ala.App. 262, 73 So. 139, certiorari denied Ex parte Palmer, 198 Ala. 693, 73 So. 1000; McAdory v. State, 62 Ala. 154. And this is true whether before or after the commission of the offense. Rountree v. State, 20 Ala.App. 225, 101 So. 325.

The accused lived in the neighborhood where Ganguet pastured his cattle and where May had impounded them. The two Brown women, according to the claim of Blakeney and May, were also supposed to live in the same section of the county. These were the two from whom accused and May claimed the cattle were purchased. If there were no such persons, proof of this fact would certainly be most incriminating against the accused. It appears to us to have been entirely competent for old settlers of the community to testify that they did not know and had never known any such person or persons as the two Brown women.

In oral charge to the jury, the trial court did state, "It matters not about who the owner was of the cattle." This statement standing alone is obviously incorrect, but, construing the charge as a whole, which we must do, no prejudice appears. The court in this instance was treating of the law of conspiracy and not of the constituents of proof required to sustain the charge. It, of course, was necessary that the ownership of the cattle be proved as laid in the indictment. And the court so instructed the jury. Here, as an instance: "Every material allegation of the offense must be proven beyond a reasonable doubt to your satisfaction—not to my satisfaction, but to your satisfaction, to the satisfaction of you twelve men." And further that to sustain a conviction they must believe beyond a reasonable doubt that Blakeney conspired with May that the latter pen up "Ganguet's cattle", etc.

Furthermore, it was an admitted fact—and without dispute—that the cattle impenned belonged to Ganguet. So the defendant could not possibly have suffered prejudice by the apparently inadvertent remark of the court aforesaid.

Charges B and C were correctly refused as misleading. To constitute guilt, it was not necessary that Blakeney and May shall have conspired to steal the identical cattle or Ganguet's cattle. If there were a conspiracy between them to steal cattle, generally, and Ganguet's cattle were stolen, then the offense of larceny would have been accomplished. The charges were also infected with other misleading tendencies.

The appellant has been ably represented by earnest and astute counsel, and we have tendered serious study to their briefs and argument. We are impressed, however, that the defendant was accorded, below, a fair and impartial trial, free of prejudicial error, and that the judgment should stand affirmed.

Affirmed.

## On Rehearing.

The contention is renewed that the evidence was insufficient to submit the case to the jury because (1) the cattle were never in fact sold, title never passing out of the original owner and (2) the loading pen in which May penned up the cattle was on the premises of the owner. While believing our original conclusions to be sound, we defer to the earnest insistence of counsel by this further discussion.

As to the first contention, we do not think that, to constitute larceny, a sale of the stolen property need be effected. If the dominion over the property is complete and the accused assumed custody and control thereof for an instant of time and there was an actual asportation, all with the requisite felonious intent, the crime was effectuated. The authorities supra are to this effect. See, also, Phelps v. State, 6 Ala.App. 58, 60 So. 537.

In this connection is the following apposite statement from 36 Corpus Juris 750, Section 51(2): "Animals-(a) Chasing, Leading, or Driving. Merely to chase an animal without catching it or to entice it a few yards by dropping corn before it is not larceny, however felonious the intent, because no absolute and exclusive adverse possession is acquired by the wrongdoer; but if the animal is caught and tied up by the thief, or if its hobbles are removed, or if a halter is placed around its neck and it is led a short distance, the

possession is complete and the crime is larceny." See also 32 Am.Jur., Sec. 21, p. 906.

■■ As to the second insistence, the rule is practically universal that to constitute an asportation the property need not be removed from the owner's premises. Phelps v. State, supra; 36 C.J. 749, Sec. 48(b) and notes; 32 Am.Jur. 905, Sec. 19 and notes; People v. Frank, 176 Misc. 416, 27 N.Y.S.2d 227; Marshall v. State, 118 Tex.Cr.R. 561, 2 S.W.2d 233.

■ The view is adhered to that, in so far as the proof is concerned, all elements of the crime existed, the vital inquiry, here, being the intent with which May assumed dominion of the cattle and penned them up. This, as stated above, was for the jury to decide.

Rehearing denied.

### On Hearing After Remandment.

#### PER CURIAM.

It would seem that the majority opinion of the Supreme Court (upon certiorari from this court) has declared that error prevailed in the following statements of the law by the trial court in his general oral charge to the jury:

(1) "And I charge you that if you believe from the evidence in this case that these cattle of Mr. Ganguet's were in a large pasture, and were driven from a large pasture, and surrounded by and embraced in a tract of fifteen hundred acres approximately there was a four hundred acre pasture, and if you believe this defendant drove those cattle into a cattle pen inside of the four hundred acre lot, and closed the gap, why, that would be a taking and a carrying away as contemplated by the law."

(2) "After you consider all the evidence, if you are satisfied beyond a reasonable doubt that there was a conspiracy between the defendant and the other parties, and that the cattle were penned, and it was done with the purpose to steal them, it matters not about who the owner of the cattle and it matters not if the owner of the cattle didn't lose anything by it, the asportavit and carrying away was contemplated when the cattle were wrongfully and corruptly put in the cattle pen."

While it was our view that the applicable law was fully elucidated by the trial court and that no substantial prejudice to the defendant intervened by the foregoing excerpts, when read and considered in connection with the entire charge, oral and written, the Supreme Court has indulged a contrary conclusion, so we must respectfully abide thereby (Code 1940, Title 13, Section 95). Accordingly, a reversal of the judgment must be entered.

As to the pertinent principles of law invoked and discussed in our original opinion, above, it appears that the Supreme Court is in accord.

■ Nevertheless, we deem it proper, as guide to the lower court in another trial, to point out that the evidence is fully sufficient to require submission of the issue of guilt to the jury. There is no warrant for a contrary conclusion.

Reversed and remanded pursuant to the dictates of Section 95, Title 13, Code 1940.