(4) No.

(5) No.

 88 So.2d 175

### INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O., et al.

v.

### Paul S. RUSSELL.

### 8 Div. 751.

Supreme Court of Alabama.

March 22, 1956.

Rehearing Denied June 21, 1956.

Adair & Goldthwaite, Atlanta, Ga., Harold A. Cranefield, Detroit, Mich., and Sherman B. Powell, Decatur, for appellants.

Horace C. Wilkinson, Birmingham, and Julian Harris and Norman W. Harris, Decatur, for appellee.

464

of America, C.I.O., an unincorporated organization, and other unions, later stricken by amendment, and Michael Volk, and other individuals, who were also stricken by amendment. Michael Volk is a resident of the State of Alabama and a member of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O., an unincorporated organization. The defendants filed a plea to the jurisdiction, to which the plaintiff demurred. The court overruled the demurrer to the plea and because of this adverse ruling, the plaintiff took a nonsuit and appealed on the record, as authorized by Sec. 819, Tit. 7, Code 1940. On that appeal, this court held that the Circuit Court of Morgan County, Alabama, did have jurisdiction of the cause of action stated in the complaint and reversed and remanded the cause to the Circuit Court of Morgan County. Russell v. International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, C.I.O., 258 Ala. 615, 64 So.2d 384.

After the cause was remanded to the circuit court, that court set aside its judgment of nonsuit and reinstated the cause on the trial docket. Thereafter, some amendments were made to the complaint, and the complaint as last amended contained two counts which were substantially the same as the counts before this court on former appeal. The plea to the jurisdiction of the court was refiled and demurrers thereto were sustained by the trial court. Demurrers to each count of the complaint being overruled, defendants entered a plea of the general issue in short by consent with leave, etc. The case was then tried by a jury and resulted in a verdict for the plaintiff for $10,000, and the defendants bring this appeal.

The question of jurisdiction is again raised and argued. Since our decision on former appeal, the Supreme Court of Virginia rendered its decision in the case of United Construction Workers v. Laburnum Construction Corp., 194 Va. 872, 75 S.E.2d 694, 699. The Virginia Court there said:

"It is settled by recent decisions of the Supreme Court of the United States

Cooper, Mitch & Black, Birmingham, for Congress of Industrial Organizations, American Federation of Labor, etc., amici curiae.

LIVINGSTON, Chief Justice.

This is the second appeal in this cause. Paul S. Russell brought suit against International Union, United Automobile, Aircraft and Agricultural Implement Workers

that by the passage of the National Labor Relations Act of 1935, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. as amended by the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S.C.A. § 141 et seq., Congress has occupied and closed to the States the field of 'regulation of peaceful strikes for higher wages' in industries engaged in interstate commerce. International Union, etc. v. O'Brien, 339 U.S. 454, 457, 70 S.Ct. 781, 783, 94 L.Ed. 978; Amalgamated Ass'n, etc. v. Wisconsin Employment Rel. Bd., 340 U.S. 383, 390, 71 S.Ct. 359, 363, 95 L.Ed. 364.

"But this is not to say that by the passage of the Act the courts of the several States have been deprived of their traditional power and jurisdiction to deal with unlawful conduct committed within their respective territorial limits during the course of a labor dispute which may affect interstate commerce. The Supreme Court has repeatedly held that an 'intention of Congress to exclude states from exerting their police power must be clearly manifested.' Allen-Bradley Local, etc. v. Wisconsin Employment Rel. Bd., 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154, and cases there cited. As was said in Kelly v. State of Washington, 302 U.S. 1, 10, 58 S.Ct. 87, 92, 82 L.Ed. 3, '* * * the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so "direct and positive" that the two acts cannot· "be reconciled or consistently stand together." '

"In Erwin Mills, Inc., v. Textile Workers Union of America, 234 N.C. 321, 67 S.E.2d 372, it was held that the federal Act did not deprive the State court of the power by appropriate action to protect persons and property from threatened unlawful acts of violence committed during the course of a strike or labor dispute and injurious to the rights of the State's citizens. To the same effect are, Williams v. Cedar-town Textiles, 208 Ga. 659, 68 S.E.2d 705; International Moulders, etc. v. Texas Foundries, Tex.Civ.App., 241 S.W.2d 213; State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S.W.2d 1; Rice and Holman v. United Elec. Radio & Mach. Workers, 3 N.J.Super. 258, 65 A.2d 638.

"The determination of the present question is governed by the same principles. While the Act provides a remedy to restrain the commission of acts constituting unfair labor practices, there are no words which indicate that such remedy is exclusive, or that the Act was designed to deprive an *employer or his employees* of the common-law right of action in a State court for acts of violence or intimidation which may constitute unfair labor practices. Nor does the exercise by the State of its jurisdiction in enforcing such cause of action conflict with any of the provisions of the Act, or in any way impinge upon the rights thereby protected. (Emphasis supplied.)

"Upon substantially this reasoning the Supreme Court of Alabama in Russell v. International Union, 258 Ala. 615, 64 So.2d 384, decided March 13, 1953, upheld the right of the State court to entertain an action for damages against a labor union for malicious acts of violence and threats of personal injury by the union's agents which prevented 'plaintiff from engaging in his employment,' although such conduct on the part of the union's agents constituted an unfair labor practice under the federal Act.

"The motion to dismiss was properly overruled."

The Supreme Court of the United States in reviewing the Laburnum case, supra, said:

"The question before us is whether the Labor Management Relations Act, 1947, has given the National Labor Relations Board such exclusive juris-

diction over the subject matter of a common-law tort action for damages as to preclude an appropriate state court from hearing and determining its issues where such conduct constitutes an unfair labor practice under that Act. For the reasons hereafter stated, we hold that it has not." 347 U.S 656, 74 S.Ct. 833, 834, 98 L.Ed. 1025

These recent cases but fortify our decision on former appeal. The argument that there is a distinction between the Laburnum case and the instant case, in that the employer was the plaintiff in the one, and an employee is the plaintiff in the other, is clearly without merit.

The legal sufficiency of each of the two counts of the complaint which were submitted to the jury is assailed on this appeal. As stated above, the complaint was amended after the cause was remanded to the trial court by this court. We have indicated that the amendments worked no material change in either of the two counts, but for perfect clarity Count One of the complaint, as it reads giving effect to all amendments to it, will be set out in the report of the case. Count 2 is similar to Count One, except that it alleges a conspiracy among the defendants in connection with the same matters alleged in Count One.

■■■ In briefs, both appellants and appellee devote much time and space to the question as to whether the complaint states a cause of action for false imprisonment; also, as to whether it states a cause of action as for a nuisance in blocking a public street. But we lay these arguments aside. We think the complaint states a cause of action for unlawfully and maliciously preventing plaintiff from engaging in his employment. We also think that the evidence was sufficient to take the case to the jury on both counts of the complaint.

Two principal theories are advanced as to why the complaint does not state a cause of action for unlawfully and maliciously preventing plaintiff from engaging in his employment. First, that the complaint does not sufficiently allege that plaintiff lost wages as a result of the unlawful picketing. In other words, that it is not alleged that work would have been available to plaintiff at the plant had he been able to enter it during the period of time complained of. Second, that the names of the agents through whom the union acted is not shown, and that Count 2 is vague and indefinite.

■■■ We need not cite authority to the effect that peaceful picketing for a lawful purpose and in a lawful manner is lawful. We judicially know that, ordinarily, union employees will not cross a picket line. It is equally true that union or non-union employees may lawfully cross a picket line if they desire to do so. But here, these matters are unimportant. The gravamen of the complaint is that defendants unlawfully and maliciously prevented plaintiff from engaging in his employment by unlawful means.

■■■ This court recognizes that the right to pursue a lawful occupation is a property right, and the wrongful interference therewith is an actionable wrong. Sparks v. McCrary, 156 Ala. 382, 47 So. 332, 22 L.R.A.,N.S., 1224; Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657; U. S. Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520; Bowen v. Morris, 219 Ala. 689, 123 So. 222; Hill Grocery Co. v. Carroll, 223 Ala. 376, 136 So. 789; Carter v. Knapp Motor Co., 243 Ala. 600, 11 So.2d 383, 144 A.L.R. 1177; Russell v. International Union, etc., supra; Lash v. State, 244 Ala. 48, 14 So. 2d 229; Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810.

Sparks v. McCrary, supra [156 Ala. 382, 47 So. 334], was an action in which plaintiff alleged that defendant wrongfully prevented plaintiff from carrying on his retail business. In reversing a judgment sustaining a demurrer to the complaint, this court said:

"In necessary consequence, an unlawful invasion of or interference with the pursuit or progress of one's trade, profession, or business is a wrong for

which an action lies. Holt, C. J., in Keeble v. Hickeringill, 11 East, 574, thus states the doctrine: 'He that hinders another in his trade or livelihood is liable to an action for so hindering him'—though it must be that he intended the broad declaration to be subject to the qualification that the hindrance, the act or conduct so resulting, be wrongful, unlawful, and this, independent, as a general rule, of the motive or intent with which the hindrance was accomplished."

■ Employees may strike and may picket their employer's place of business when it is done in a lawful manner and to accomplish a lawful purpose. Hotel & Restaurant Employees, International Alliance v. Greenwood, 249 Ala. 265, 30 So.2d 696; Alabama State Federation of Labor v. McAdory, supra; Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. Picketing must be conducted in a lawful manner and it becomes unlawful when force and violence or the threat of force and violence are used to intimidate employees who are not engaging in the strike. Hardie-Tynes Mfg. Co. v. Cruise, supra; Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836. The use of force and violence or the threat of force and violence against one's person is manifestly unlawful. Furthermore, the Alabama statutes make it unlawful for one to use force, threats or intimidation to prevent another from engaging in a lawful occupation. Tit. 14, § 57, Code 1940; Tit. 26, §§ 384, 385, Cumulative Pocket Part, Code 1940.

■ The rules of pleading in Alabama require that all matters essential to plaintiff's right to relief be stated with sufficient certainty, clearness and precision to enable defendant to prepare to defend against the action and so as to allow the court and jury to understand the allegations. Cauble v. Boy Scouts of America, 250 Ala. 152, 33 So.2d 461; Dudley v. Martin, 241 Ala. 435, 3 So.2d 7; Alabama Great Southern R. Co. v. Cardwell, 171 Ala. 274, 55 So. 185; Weller & Co. v. Camp, 169 Ala. 275, 52 So. 929, 28 L.R.A., N.S., 1106.

The complaint alleges that at the time complained of "Plaintiff was an employee of Calumet & Hecla Consolidated Copper Co. (Wolverine Tube Division) engaged in his said employment at the plant of his said employer in Decatur, Alabama," and the defendants "in order to make the strike effective, and in order to prevent plaintiff and various other employees of plaintiff's employer, who desired to continue working for their said employer, notwithstanding said strike, from entering their employer's place of business, established and maintained from, to-wit, July 18, 1951 to September 24, 1951, a picket line along and in said public street at a point thereon in close proximity to said plant, consisting of great numbers of persons * * *, some of whom were walking at various and sundry intervals during said period in a close and compact circle across the entire traveled portion of said street, and said pickets, on or about July 18, 1951, by force of numbers, threats of bodily harm to plaintiff and damage to his property, and by force and violence consisting of taking hold of the automobile in which plaintiff was riding and thereby stopping it, and consisting of some of said pickets standing or walking in front of said automobile, blocked said public street and made passage to said plant over the same impossible for plaintiff and for others similarly situated, and defendants thereby willfully and maliciously prevented plaintiff from going to and from said plant and from engaging in his said employment, and caused plaintiff to lose much time from his work, to-wit, from July 18, 1951 to August 22, 1951, and to lose earnings from his employment at said plant which he would have received had he not been prevented as aforesaid from going to and from said plant * * *"

We think it would be indulging in hypercriticism to say that the complaint was demurrable because it did not spell out in so many words that work was available to the plaintiff at his employer's plant. The com-

plaint alleges that plaintiff had a job; that he was on his way to it; that defendants unlawfully and maliciously prevented him from getting there, and as a consequence he lost wages on account thereof. These allegations of fact are sufficient to show that work was available to plaintiff had he been able to go to his employer's plant. Indeed, defendants under the plea of the general issue in short by consent attempted to prove that no work was available to plaintiff because of the strike at the plant. The evidence on this point was in conflict and resolved against defendants by the jury.

It is not necessary that plaintiff allege the name of the agent or agents through whom the defendant union was acting. Abingdon Mills v. Grogan, 167 Ala. 146, 52 So. 596. The criticism that Count 2 is vague and indefinite is also without merit. The demurrer to each count was properly overruled.

Appellants assign as error the action of the trial court in overruling appellants' motion for new trial, which motion recited as grounds that: (1) The verdict is contrary to the evidence, (2) the verdict is not sustained by the evidence, (3) the verdict is contrary to the great weight of the evidence, and (4) the verdict is contrary to law.

■ Appellants' argument is based on the theory that plaintiff is not entitled to any recovery against the defendants if plaintiff's loss of working time and wages was due to a closing of the plant by his employer and not due to any action on the part of the defendants which may have prevented plaintiff from crossing the picket line. Appellants argue that the evidence clearly shows that plaintiff's employer closed the plant to all hourly-rated employees pursuant to an agreement between the employer and the union, and that even though plaintiff had been able to cross the picket line, no work would have been available to him. The record in this case is very lengthy, making it impractical to set out the evidence in this opinion. It is sufficient to say that there was evidence introduced on behalf of the plaintiff which contradicts the defendants' evidence, and which, if believed, would justify a verdict for plaintiff. Under these circumstances, we will not overrule the trial court's ruling on the motion for new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Smith v. Smith, 254 Ala. 404, 48 So.2d 546; Bell v. Nichols, 245 Ala. 274, 16 So.2d 799.

■ A directed verdict for the defendants can only be justified upon the theory that the plaintiff, upon whom rests the burden of proof to establish the right to recover, has wholly failed to adduce evidence to support his cause of action, or that the testimony of the plaintiff's own witnesses, without conflict, makes out the defense of the opposing party. If plaintiff makes out a prima facie case, and the defense is dependent upon oral testimony, the court must leave the credibility of the evidence to the jury and not direct a verdict for the defendant. Schoenith, Inc., v. Forrester, 260 Ala. 271, 69 So.2d 454; Byars v. Alabama Power Co., 233 Ala. 533, 172 So. 621, and cases cited therein. In this jurisdiction, there need be only a scintilla of evidence to require reference of the issue raised thereby to the jury. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251. Appellants contend that plaintiff introduced no evidence to show that plaintiff was damaged by any illegal conduct on the part of the defendants.

The record reveals that plaintiff introduced evidence tending to prove the following: Plaintiff was a regular employee of the Calumet and Hecla Consolidated Copper Company (Wolverine Tube Division). He worked regularly at an hourly rate of pay and averaged approximately 50 hours a week for the six months preceding July 18, 1951. On occasions when no work was available, the employees were notified in advance by the company. Plaintiff had not been notified that there would be no work on July 18, 1951, and he and numerous other employees went to the plant on that morning expecting to work. When these employees arrived at the approaches to the plant, they found that a strike was in progress, directed by officials of defendant union, including defendant,

Michael Volk. The union placed a picket line across the street leading into the plant. Plaintiff attempted to drive through the picket line, but large numbers of men closed in around his car, making it impossible to go forward. One of the strikers held onto the car door handle, and there were shouted threats to turn plaintiff's car over, along with other threatening shouts from the strikers. After some time, plaintiff left the scene and returned to his home. No hourly-rated employees were able to cross the picket line until August 22, 1951, when, with the aid of a large number of law enforcement officers, approximately 200 employees entered the plant and resumed work.

Frank W. Oakes, who was Industrial and Public Relations Director for the plant and who represented the management at a pre-strike meeting with the union, denied telling union officials that the plant would be closed to hourly-rated employees during the strike. Considering the evidence introduced by plaintiff, it was not error to refuse to direct a verdict for defendants.

■ Appellants assign as error the admission of testimony concerning events transpiring on August 22, 1951 over objection that such testimony was irrelevant, incompetent, immaterial and illegal for the reason that the pleading confined the issue to events occurring within a period which ended on August 21, 1951. The court admitted the evidence for the purpose of proving the allegations of Count 2 of the complaint which alleges a conspiracy to prevent plaintiff's engaging in his employment. The evidence was admissible for this purpose. In the recent case of Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251, 255, Mr. Justice Simpson, speaking for the court, said:

"It is contended for all the defendants that there was no proof that they had entered into any sort of conspiracy prior to October 3, 1947, the onset date of the alleged combination. Concededly there was no positive evidence to that effect, but a conspiracy need not alone be established by that character of evidence. Indeed, seldom is such the case. It is only by looking to the conduct of the alleged conspirators during the progress of the conspiracy and the end result achieved that usually such a fact is established. And to that end it is proper to consider evidence extending over a considerable period, both before and after the date of the alleged combination and even after its termination, just so the proof has a tendency to establish the ultimate fact. Scheele v. Union Loan & Finance Co., 200 Minn. 554, 274 N.W. 673; Blakeney v. State, 31 Ala.App. 154, 13 So.2d 424, certiorari denied, 244 Ala. 262, 13 So.2d 430; 15 C.J.S., Conspiracy, § 92, p. 1143."

Under the above-stated principles, evidence of actions of the pickets on August 22, 1951 was clearly admissible to prove a conspiracy. On this theory it was also correct to admit evidence of an incident occurring on August 20, 1951, in which strikers used force to prevent a locomotive from pulling cars loaded with raw materials into the plant. All of the incidents have probative value toward the determination of whether or not a conspiracy existed on the part of the defendants.

The question is raised as to the admissibility of a motion picture film which the trial court allowed to be introduced into evidence over defendants' objection. The film purported to show action taking place on the picket line on the morning of August 22, 1951, which was the day plaintiff and others returned to work. The picture was taken by the witness McGregor who testified to facts tending to identify the film and verify it as a true representation of the action he saw on that occasion. He also testified as to the technical and mechanical features of producing the film and showing it to the jury in such a way as to accurately portray the events filmed. The introduction of the film was objected to on the grounds that it was a copy and not the original film, that it had been cut and edited, and that it was not a continu-

ous picture, but had been taken at selected intervals during the morning.

The best evidence rule does not apply to this situation so as to make the copy inadmissible. The motion picture does not of itself prove an actual occurrence but the thing reproduced must be established by the testimony of witnesses. Decamp v. United States, 56 App.D.C. 119, 10 F.2d 984. The motion picture as exhibited to the jury is the pictorial communication of the witness' testimony and is used to convey the observations of the witness to the jury more fully and accurately than the witness can convey them verbally. Brown v. State, 186 Tenn. 378, 210 S.W.2d 670. The picture is not admissible unless a witness testifies that the picture as exhibited accurately reproduces the objects or actions which he observed. Pacific Mutual Life Ins. Co. of California v. Marks, 230 Ala. 417, 161 So. 543; City of Anniston v. Simmons, 31 Ala.App. 536, 20 So.2d 52, certiorari denied 246 Ala. 153, 20 So.2d 54; Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877; Kansas City, Memphis & Birmingham R. Co. v. Smith, 90 Ala. 25, 8 So. 43; Alabama Trunk & Luggage Co. v. Hauer, 214 Ala. 473, 108 So. 339.

Where a witness testifies that the picture is an accurate reproduction of the matter it purports to portray, the fact that it is not the original film or that it has been cut to the extent of adding titles showing the time certain pictured events occurred does not necessarily make the film inadmissible. These matters affect the credibility and the weight to be given the picture by the jury.

There is no doubt that motion pictures are subject to change and falsification, as is the testimony of any witness, but protection against falsification or misrepresentation lies in the requirement of preliminary proof that the picture is an accurate reproduction of the event which it depicts and in the opportunity for cross examination of the witness making such proof. People v. Dabb, 32 Cal.2d 491, 197 P.2d 1; Heiman v. Market Street Ry. Co., 21 Cal.App.2d 311, 69 P.2d 178.

The objection that a motion picture film which does not show a continuity of action is misleading and therefore inadmissible is treated in McGoorty v. Benhart, 305 Ill.App. 458, 27 N.E.2d 289, in which the court held that where, as here, the photographer testified how the pictures were taken at intervals and at different times, the jury would not be misled.

The determination of the sufficiency of the preliminary proofs offered to identify the photograph or to show that it is an accurate representation of the objects which it purports to portray is a matter within the sound discretion of the trial court and will not be reviewable except for gross abuse. McKee v. State, 253 Ala. 235, 44 So.2d 781.

It is likewise a matter for the trial court in the exercise of his sound discretion to determine whether the motion picture will aid the jury or tend to confuse or prejudice the jury. Morris v. E. I. DuPont De Nemours & Co., 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 352; State to Use of China v. United Railways & Electric Co. of Baltimore, 162 Md. 404, 159 A. 916, 83 A.L.R. 1307; Rogers v. City of Detroit, 289 Mich. 86, 286 N.W. 167; Denison v. Omaha & C. B. St. Ry. Co., 135 Neb. 307, 280 N.W. 905; Boyarsky v. G. A. Zimmerman Corp., 240 App.Div. 361, 270 N.Y.S. 134.

In this case, testimony showed that McGregor operated the motion picture camera taking the picture. He had been trained in photography and the exhibition of motion pictures. He sent the film to the Eastman Laboratory in Chicago to be developed as is the usual practice among those making industrial motion pictures. When it was returned to him, he cut off the unexposed portions on each end of the film and spliced in titles giving the time each pictured event occurred. The film was sent again to the Eastman Laboratory where the copy which was introduced was made. McGregor testified that the film introduced and shown in

court is identical to the original, and depicts the objects and action exactly as he took it. McGregor also testified to other details of making and exhibiting the picture which were necessary to a proper foundation for admission of the film but which are unimportant to the question now before us. Captain C. M. Thorsen, of the Alabama Highway Patrol, who was on duty at the scene of the strike on August 22, 1951, also testified that the film as shown to the jury accurately portrayed the action he had observed there on that morning.

■ It does not appear that the trial judge abused his discretion by allowing this film to be introduced.

Charge No. 2, given at the request of plaintiff, is as follows:

"2. If after considering all of the evidence in this case you are reasonably satisfied therefrom that the plaintiff is entitled to recover, you may include in your verdict what the law knows as punitive or exemplary damages; that is, such amount as in your judgment and discretion is reasonable as a punishment to the defendants for their conduct on the occasion complained of and to make an example to deter the defendants and others from similar conduct in the future."

■ This charge is not subject to defendants' ground of objection that it does not instruct that punitive damages may be awarded only if the acts of defendants were found to have been done willfully, wantonly, or maliciously. The charge predicates the awarding of punitive damages on a determination that plaintiff is entitled to a recovery. In order to determine that plaintiff is entitled to a recovery the jury must find that defendants' acts were willfully and maliciously done, since malice is an essential element of the cause of action alleged in plaintiff's complaint. Wherever malice is an ingredient of the cause of action, the plaintiff's recovery may include punitive damages in the sound discretion of the jury. Penney v. Warren, 217 Ala. 120, 115 So. 16.

■ Appellants further argue that the charge was erroneously given because it fails to instruct that punitive damages could be awarded only if the jury determined that plaintiff suffered actual damages. This argument is without merit for the subject is fully covered in the oral charge given by the judge. Such being the case, if any error existed, it is not reversible error. Marbury Lumber Co. v. Lamont, 198 Ala. 566, 73 So. 923; Western Union Telegraph Co. v. Gorman, 237 Ala. 146, 185 So. 743; McGough Bakeries Corp. v. Reynolds, 250 Ala. 592, 35 So.2d 332. The oral charge also cured any possible defect in plaintiff's requested Charge No. 3, given by the court.

■ Appellants assign as error 'the giving of an unnumbered explanatory charge at the request of the plaintiff. However, as the charge appears in the transcript of the record, it does not contain the endorsement by the judge as required by Sec. 273, Tit. 7, Code 1940, and, therefore, presents nothing for review. Appellants filed a motion to set aside submission and correct the record to show that the charge was actually properly endorsed by the judge. This motion is not granted for it would be unavailing to do so since the subject matter of the charge was fully and correctly covered in the court's oral charge.

■ Appellants argue that Charge No. 9, given at the request of plaintiff, authorizes the jury to find for plaintiff upon the basis that unlawful picketing alone is sufficient to create a cause of action. We are not convinced that the charge necessarily must be so construed. Where a charge is susceptible of two constructions, appellate courts will indulge the construction which will sustain rather than condemn. Birmingham Southern Ry. Co. v. Harrison, 203 Ala. 284, 82 So. 534; Alabama Consolidated C. & I. Co. v. Heald, 171 Ala. 263, 55 So. 181.

■ The refusal of the court to give defendants' requested charges numbered 40 and 28 are separately assigned as error and argued. The principles of law con-

tained in these charges were covered in the court's oral charge and in charges given at the request of the defendants; therefore, the refusal to give these charges was not error. Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633; Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 74 So.2d 266; City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259; Lackey v. Lackey, 262 Ala. 45, 76 So.2d 761.

■ Charge 33, requested by defendants, is misleading in that it would deny recovery to plaintiff on Count 2 of the complaint if the jury should find that at some indefinite time prior to the strike the defendants believed or had reason to believe no work was available to plaintiff in the plant. Defendants' requested charges numbered 26 and 27 are subject to the same criticism.

■ Defendants' requested charges 3 and 36 were correctly refused as singling out and placing undue emphasis upon the evidence contained in interrogatories introduced by plaintiff. Huntsville Knitting Mills v. Butner, 200 Ala. 288, 76 So. 54; Lester v. Jacobs, 212 Ala. 614, 103 So. 682,

■■ Defendants' counsel objected to asking defendants' witnesses Duncan and Starling on cross-examination what their salaries were as officials of defendant union. The testimony was allowed to be introduced by the trial judge as having a bearing on the credibility of the witnesses. It was within the discretion of the trial court to allow this testimony. Wide latitude is allowed on cross-examination to bring out facts tending to show bias on the part of a witness. The extent of such cross-examination is within the sound discretion of the trial court. Hackins v. State, 212 Ala. 606, 103 So. 468; Drummond v. Drummond, 212 Ala. 242, 102 So. 112; Ex parte Ford, 213 Ala. 410, 104 So. 840, granting certiorari Ford v. State, 20 Ala. App. 663, 104 So. 838.

Grounds 95 and 96 of defendants' motion for new trial contend that the following statements by plaintiff's counsel during his closing argument were so grossly improper and prejudicial as to be grounds for granting a new trial:

"The only way that you can reach a labor union and make it sorry for what it has done is through its pocket book because it has no conscience and you can't put it in jail. The only way you can reach it is through its pocket book."

"My only worry is that you won't return your verdict for enough money. You know the court can reduce your verdict if you return an amount which is too high, but there is no way in the world that anyone can increase your verdict if you make it too low."

■■ There was no objection to the argument at the time it was made. The question of the propriety of the argument was raised for the first time in defendants' motion for a new trial. Therefore, in order to work a reversal, the argument must have been so grossly improper and highly prejudicial that, even if appropriate objection had been interposed, its influence could not have been counteracted by proper action. Birmingham Railway Light & Power Co. v. Gonzales, 183 Ala. 273, 61 So. 80, Ann.Cas.1916A, 543; Brotherhood of Railroad Trainmen v. Jennings, 232 Ala. 438, 168 So. 173. It does not appear that the arguments are so highly prejudicial and improper as to warrant a reversal. In fact, an argument very similar to the first one listed above was considered by this court in Tutwiler Coal, Coke & Iron Co. v. Nail, 141 Ala. 374, 37 So. 634, and was held to be proper.

■ The excessiveness of the verdict was assigned as grounds for new trial and argued on appeal. Where, as here, the verdict may include punitive damages, the imposition of such damages must be left to the discretion of the jury, whose judgment will not be interfered with unless the amount is so excessive as to show passion or prejudice, or some other improper sentiment. Key v. Dozier, 252 Ala. 631, 42 So.2d 254; Abingdon Mills v. Grogan, supra; Powell v. Bingham, 239 Ala. 515, 196

So. 160, certiorari denied 29 Ala.App. 248, 196 So. 154; Tennessee Coal, Iron & R. Co. v. Aycock, 248 Ala. 498, 28 So.2d 417.

■ Considering that the jury was properly instructed as to punitive damages, and considering the nature of the wrong complained of, and the necessity of preventing similar wrongs, as the court in Coleman v. Pepper, 159 Ala. 310, 49 So. 310, said that we must do, the verdict in this case cannot be held to be excessive.

We find no reversible error in the record; therefore, this case should be, and is, hereby affirmed

Affirmed.

LAWSON, GOODWYN and MERRILL, JJ., concur.