PER CURIAM.
The plaintiffs, Maggie Huckleberry and Banner Bouyer, brought this action against Michael Shadrick, M.C. Dixon Lumber Co., Attorney-at-law Russell L. Irby, and the law partnership of Clayton and Clayton.
The plaintiffs specifically charge that the defendants, acting in their individual capacities and as members of a conspiracy, committed fraud upon them in violation of Code 1975, §§ 6-5-100, -104. The plaintiffs charge that the defendants misinformed them and led them to believe that documents they signed were for the sale of timber, when in fact they were for the sale of land.
The elderly and uneducated plaintiffs are two of six children of Noah Bouyer. Each plaintiff inherited from their father a ¾⅜ interest in approximately 575 acres known as the “Noah Bouyer tract.”
According to plaintiff Bouyer, Shadrick first approached him in January of 1980 and inquired as to whether he would be interested in selling timber from the tract. Bouyer told Shadrick that he would like to sell the pulpwood from the tract because he needed money to pay “the tax” on the land.
Shadrick went to Irby and obtained a blank “timber option” form, which he in turn had Bouyer sign. Bouyer, according *1210 to Shadrick, represented himself to Sha-drick as the administrator of the property for the other owners and purported to have their authorization to sell the timber. When Shadrick’s crew moved onto the property and began to cut timber, however, the other owners approached Shadrick and informed him that they had not given their permission for him to cut. Shadrick’s timber crew then left the property.
Shadrick contacted Bouyer several days later to inquire whether his other five brothers and sisters had decided to sell the timber. Bouyer informed him that he and his sister, Maggie Huckleberry, would like to sell their interest in the timber, but that the other owners did not wish to sell.
Shadrick again contacted Irby and had him prepare warranty timber deeds. These deeds purported to convey to Shadrick the right to cut timber on the entire Noah Bouyer tract for a period of ten years. Bouyer signed this timber deed on February 29, 1980, and Huckleberry signed an identical deed on March 3, 1980. The deeds were recorded on March 10, 1980.
On March 11, 1980, Shadrick again summoned Bouyer and Huckleberry to the law office of Irby. According to Bouyer, Sha-drick asked them to execute certain documents in order to keep the other owners from interfering with the cutting of the timber. The documents, in fact, were option agreements whereby Bouyer and Huckleberry granted Shadrick a ten-year option to purchase their interests in the Noah Bouyer tract for $5,000 each. In return for granting this option, Bouyer and Huckleberry received $100 each (subsequently treated as down payments and deducted from the purchase price).
Thereafter, Dixon Lumber paid Shadrick $44,200 for his unexercised option to purchase the interest of Bouyer and Huckleberry. Clayton and Clayton, as general counsel for Dixon Lumber, prepared the document by which Shadrick assigned the option to Dixon Lumber. That firm also prepared the warranty deeds by which Bouyer and Huckleberry conveyed their interests in the property to Dixon Lumber (for $4,900 each), when Dixon Lumber decided to exercise the option. The checks used in payment were drawn on Dixon Lumber’s account and made payable directly to the plaintiffs.
Shadrick, Dixon Lumber, Irby, and Clayton and Clayton each made separate motions for summary judgment. The trial court granted summary judgment for Dixon Lumber, Irby, and Clayton and Clayton.[1]
Our careful review of the record, including, by way of depositions, detailed accounts of pertinent events by each of the parties, reveals that the trial court necessarily made findings from conflicting material factual inferences in violation of established criteria for testing motions for summary judgment. Because this case is remanded for a trial on the factual issues, a detailed recital of the conflicting inferences would serve no useful purpose. Suffice it to say that this controversy — involving the nature and character of the conspiracy-to-defraud claim, the undisputed factual background giving rise to the claim, and the ultimate result — is not subject to resolution within the trial court’s summary prerogatives.
Counsel’s contention in support of summary judgment centers primarily on the undisputed evidence that their respective clients had little or no direct contact with the plaintiffs throughout the entire transaction that culminated in the plaintiffs’ loss of title to the subject property. This contention emphasizes the fact that defendant Shadrick alone dealt with the plaintiffs, so that whatever promises and representations were made to them were made by Shadrick, against whom the fraud claim is still pending. While this argument is pur-suasive, it is a factual, not a legal, defense.
It is not an essential element of the claim that a particular conspirator commit an *1211 overt act in furtherance of the conspiracy. As stated in Stokley v. State, 254 Ala. 534, 542, 49 So.2d 284 (1950):
“This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Morris v. State, 146 Ala. 66, 41 So. 274 [(1906)], and cases cited; Jones v. State, 174 Ala. 53, 57 So. 31 [(1911)]; Teague v. State, 245 Ala. 339, 16 So.2d 877 [(1944)].”
This principle of criminal conspiracy was again echoed in the civil action of Barber v. Stephenson, 260 Ala. 151, 156, 69 So.2d 251 (1953):
“Concededly there was no positive evidence to that effect, but a conspiracy need not alone be established by that character of evidence. Indeed, seldom is such the case. It is only by looking to the conduct of the alleged conspirators during the progress of the conspiracy and the end result achieved that usually such a fact is established. And to that end it is proper to consider evidence extending over a considerable period, both before and after the date of the alleged combination and even after its termination, just so the proof has a tendency to establish the ultimate fact. Scheele v. Union Loan & Finance Co., 200 Minn. 554, 274 N.W. 673; Blakeney v. State, 31 Ala.App. 154, 13 So.2d 424, certiorari denied, 244 Ala. 262, 13 So.2d 430; 15 C.J.S. Conspiracy § 92, p. 1143.”
The wide latitude given to the factfinder in determining ultimate facts from the totality of the circumstances and any reasonable inferences therefrom, particularly in claims of this nature, dictates our holding that the trial court erred in granting summary judgment as to each of these defendants.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES,* BEATTY,* and ADAMS,* JJ., concur.

. Summary judgments were entered separately for (1) Irby and (2) Dixon Lumber and Clayton and Clayton, and each was made final pursuant to A.R.Civ.P. 54(b), leaving the claim against Shadrick still pending; thus, two separate notices of appeal were filed. These appeals are consolidated and treated as a single case for purposes of this opinion.