309 So.2d 505

**Charles BUTLER, alias**

v.

**STATE.**

**6 Div. 675.**

Court of Criminal Appeals of Alabama.

March 4, 1975.

---

2. Statutory mistrial first came in the 1907 Code. See Parham v. State, 47 Ala.App. 76, 250 So.2d 613.

Edward L. Ramsey, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and David L. Weathers, Asst. Atty. Gen., Birmingham, for the State, appellee.

HARRIS, Judge.

Appellant was convicted of murder in the first degree and sentenced to life imprisonment in the penitentiary. At arraignment with a court-appointed lawyer he pleaded not guilty. After conviction he sought and obtained a free transcript and new counsel was appointed to represent him on appeal.

On the afternoon of May 6, 1972, several men had gathered at 2709 7th Avenue, North, Birmingham, Alabama, to gamble a card game called "skin". Between 3:00 and 4:00 P.M. appellant and the deceased got into an argument. The argument was concerning money. Appellant claimed the deceased owed him ten dollars, and the deceased said he did not owe him anything. The argument continued in a heated manner for several minutes. Finally someone told the deceased to give appellant the money and he put a ten-dollar bill on the table. Appellant then said, "I don't want your money, noway. I want your life. Somebody done told me you was a devil."

Appellant then got up from the table and pulled out a pistol and said, "I would rath-

er have your life, because somebody done told me you was a devil." The appellant fired his pistol several times at the deceased while he was still sitting at the table. The deceased said to appellant, "Man, what are you shooting me for? You are killing me. I ain't done nothing to you." Appellant did not say a word but kept pulling the trigger and "whammed" the deceased on the side of his head with the pistol. The deceased grabbed the pistol and was trying to take it from appellant. One of the other men present interceded in the struggle for possession of the pistol and finally got it. The deceased moved over to the wall of the room and slumped to the floor. He was pronounced dead on arrival at the University Hospital at 4:35 P.M. on the day of the shooting. It is undisputed that the deceased was unarmed at the time he was mortally wounded.

The coroner of Jefferson County testified that he examined the body at the funeral home after the clothing had been removed and found several bullet wounds to the body. He testified there was an entrance wound to the chest just right of the center line. This wound had powder burns around it. There was another entrance wound on the inside palm of one hand and this bullet went through the hand. He found another bullet wound in the right back and this bullet was removed and turned over to the Toxicologist on May 8, 1972. The coroner took photographs of the nude body of the deceased showing the bullet wounds. The clothing of the deceased was also carried to the toxicologist.

The photographs taken by the coroner were properly identified by him and introduced in evidence over appellant's objection as "being unnecessarily gruesome."

■ There was no error in the admission of the photographs in evidence. McKee v. State, 253 Ala. 235, 44 So.2d 781; Grissett v. State, 241 Ala. 343, 2 So. 2d 399.

The pistol used by appellant to kill the deceased was turned over to the authorities by appellant's counsel.

■ Mr. Robert B. Johnson, a toxicologist in charge of the Birmingham Division of the State Department of Toxicology and Criminal Investigation, qualified as a ballistics expert. He testified that he compared three test-fired bullets from the pistol used by appellant to kill the deceased with the bullet that was removed from the body of the deceased. These bullets were compared microscopically and they matched the bullet that was removed from the body. This is conclusive evidence that the bullet removed from the body of the deceased was fired from the pistol used by appellant in the shooting.

At the conclusion of the state's case, appellant moved to exclude the state's evidence on the ground that a prima facie case had not been made out, and that the corpus delicti had not been proven in that it was not shown that the wounding of the deceased had a causal relationship with his death. The motion was overruled and denied.

Appellant did not testify. He did offer the testimony of Robert Burrell, one of the participants in the "skin" game. In sum, this witness testified that he was sitting at the gambling table when there was an argument between appellant and the deceased about some money; that appellant got up and walked toward the deceased and said something and the deceased stood up; that when the shooting started both men had their hands on the gun and they were close together and were facing each other; that he took the gun out of the hands of both men.

On cross-examination he admitted the deceased said, "You are shooting me, please don't be shooting me." He further testified that, "I am not saying Charles (appellant) fired nairn shot." His testimony was confusing and contradictory. He admitted signing a statement at Police Head-

quarters and the prosecutor cross-examined him concerning his signed statement so as to lay the proper predicate for impeachment.

From the record:

"Q. All right. Did you also, then, in answer to the question asked of you:

'During the course of this argument, did the shooting incident take place?'—

Did you answer, 'Yes, sir'?

"A. Yes, sir.

"Q. All right. And the question was asked:

'Would you tell us what happened?'

And do you remember making the answer to that question:

'Well, Ernest was sitting down at the corner of the table, and Charles, he walked up and pulled his pistol and hit him up beside the head, and I heard shots, and Ernest say, "Man, you are shooting me." '

"A. No, I didn't say it that way."

On rebuttal the state recalled the officer who took the statement from Robert Burrell and the prosecutor asked the officer if he had a conversation with Burrell on May 6, 1972, and received an affirmative reply. Thereupon the following occurred:

"Q. Thank you. Sergeant Webb, I will ask you whether or not, on that occasion, Robert Burrell—whether or not you asked him this question, or this question in substance, and whether or not he replied this, or this in substance:

Question: 'Would you tell us what happened?'

Answer: 'Well, Ernest was sitting down at the corner of the table, and Charles walked up, pulled his pistol, hit him up side the head, and I heard shots, and I heard Ernest say, "Man, you are shooting me." '

"A. Yes, sir."

It thus appears that Burrell's testimony on direct examination given in behalf of appellant was effectively impeached.

Appellant claims only two errors which should work a reversal of this case:

1. The overruling of defense motion to exclude the state's evidence for failure to prove the corpus delicti of the crime.

2. The overruling of defense objection to testimony of Willie Johnson that he walked up to appellant after the shooting and said, "you killed this man." (Tr. 77)

In Hearns v. State, 47 Ala.App. 725, 261 So.2d 64, this court said:

"Appellant's counsel argues that the State failed to meet the burden of proving the corpus delicti. In a murder prosecution the corpus delicti is established by proof of the victim's death and proof that death was caused by some person's criminal agency. Spain v. State, 37 Ala.App. 311, 68 So.2d 53. It is well settled that this may be proven by circumstantial evidence. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818; Rowe v. State, 243 Ala. 618, 11 So.2d 749. Numerous cases to this effect are found in the Alabama Digest under Homicide, ☜228(2)."

Several eye witnesses for the state testified that appellant shot a defenseless man while he was still sitting in a chair at the gambling table. This was a cold-blooded murder without any mitigating or extenuating circumstances. The deceased fell mortally wounded in the presence of these eye witnesses and was pronounced dead on arrival at the University Hospital in Birmingham. We hold the corpus delicti was clearly proven in this case.

The testimony of state witness Willie Johnson, of which appellant complains, involves the law of res gestae.

 Williams, another eye witness to the shooting, testified that he was present when appellant started an argument with the deceased about money; that four shots were fired by appellant. The first shot was deflected when one of the witnesses knocked appellant's hand but that appellant turned directly to the deceased and fired three more times. He heard the deceased saying, "Man, you are shooting me. I don't owe you no money." The deceased was sitting in a chair at the gambling table. When the fourth shot was fired the deceased grabbed the pistol and both appellant and the deceased went to the floor; that Williams walked over to appellant and said, "You killed this man", or "Man, you are killing this man." At this point appellant dropped the gun and ran. Williams further testified that only *ten seconds* elapsed from the time the first shot was fired until appellant dropped the gun and ran. We hold that Williams' statement was a part of the res gestae.

A case squarely in point is Payne v. State, 261 Ala. 397, 74 So.2d 630, wherein Mr. Justice Lawson writing for the court said:

"Over objections of the defendant, the State was permitted to introduce evidence as to Archie Russell saying, 'Joe Ed, don't shoot him any more. He's going to die anyway. I wouldn't shoot him any more.'—while the defendant had his pistol aimed at the deceased after the latter had already been shot and was lying on the floor. This statement or explanation may be regarded as part of an occurrence which still was in progress when it was made. It was so intimately connected with the defendant's conduct as to characterize and explain it, to shed light on the purpose which the defendant manifested by aiming his pistol again at the deceased, and to show how he was influenced to refrain from further shooting. The statement was a part of the res gestae and was properly admitted. Hall v. State, 11 Ala.App. 95, 65 So. 427, and cases cited."

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.

Affirmed.

All the Judges concur.