315 So.2d 609

**Robert Louis STILES**

v.

**STATE.**

8 Div. 624.

Court of Criminal Appeals of Alabama.

June 30, 1975.

Lammons, Bell & Sneed, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and William A. Golinsky, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was indicted and put to trial upon a three-count indictment charging: (1) burglary in the second degree, (2) grand larceny, and (3) buying, receiving, or concealing stolen property of the total and combined value of $295.00, taken from the Ruby Nell Restaurant, located at 2004 Pulaski Pike, Huntsville, Alabama. He was represented by counsel of his own choice and at arraignment he pleaded not guilty. After conviction he was found to be indigent and was furnished a free transcript and trial counsel was appointed to represent him on appeal.

The facts are not in dispute. Appellant did not testify nor did he offer any evidence in his behalf. When the state rested, appellant moved to exclude the state's evidence on the ground that the state failed to make out a prima facie case. This motion was overruled and denied.

Sometime during the night of August 13, 1974, or the early morning hours of August 14, 1974, this restaurant was entered by breaking a window in the building. The broken window was discovered by a Huntsville Police Officer while on routine patrol. The officer called Mr. Woodrow Harbin, the owner of the restaurant who lived across the street. Accord-

ing to Mr. Harbin, he got the call at 3:30 A.M. and went immediately to the restaurant. A police car was there when he arrived. Harbin took an inventory of the missing property and testified:

"Well, several items; first of all, a music machine had been broken into and probably—we had to estimate—between $50 and $65 was taken. There was a twelve gauge shotgun. It was more of an antique than a gun you would usually use. It had a gold trigger and gold trigger guard. I guess it was worth $100 to $125 and there was a FM receiver missing, a radio, and I believe an electric guitar and another item or two, I don't remember off hand."

Harbin valued the electric guitar at twenty-five or thirty dollars and the Lafayette receiver between $50 and $65.00. He further testified that he saw the missing property a couple of hours later at the Police Department. He identified the property as his and the officers surrendered the property to him. The officers showed him 3 or 4 twelve gauge shotgun shells and he identified them as his property and said he found one twelve gauge shotgun shell on the floor of his restaurant when he was inspecting the premises after the burglary.

Mr. Robert Dollar testified that he was an employee of the Ruby Nell Restaurant and worked there 14 or 15 years prior to the burglary; that he closed the restaurant between 9:30 and 10:00 P.M. on the night of August 13, 1974, and made sure that all the doors and windows were locked.

Officer Paul Bridges was the officer who discovered the broken window and called Mr. Harbin. He also was present when the owner made an inventory of the missing property and he found a shotgun shell on the floor behind the counter which he turned over to Detective Sharp and which was introduced in evidence. Bridges testified that the restaurant was in a state of disarray. He found the ciga-

rette machine had been popped open and the cabinets were opened and the grills over the store were pulled down. He also found a gold colored sock. He called headquarters to report the burglary and Officers Nelson and Hines came as a back-up unit.

Officer Pat Dillaha testified that he was on duty the night of the burglary and saw a 1967 Chevrolet, black and white, traveling west on Oakwood Avenue and observed the car weaving from the right lane to the left lane and run up on the curb one time. The time was between 3:30 and 4:00 A.M. He called headquarters for assistance in stopping the car. He also gave a description of the car.

Officer Larry Nelson picked up the radio dispatch while he was patrolling around the area of Pulaski Pike and Oakwood and stopped the 1967 black and white Chevrolet within two blocks. He asked the driver for his identification and was told he had none. He asked his name and the driver said his name was Wayne Eubanks. Eubanks was drunk and he was placed under arrest, handcuffed and put in the patrol car. Appellant was a passenger in the car and he identified himself to the officer and said he was the owner of the car. He asked the officer if he could drive his car on home and the officer told him the car had to be impounded and he called for a wrecker. He also called for assistance to make an impoundment search and to inventory any valuables found in the car. Officer Nixon came to the scene to assist Nelson. Nelson took the car keys and opened the trunk and found a twelve gauge double-barrel shotgun, electric guitar, FM receiver radio and a 5-band radio.

Officer Nixon looked in the glove compartment and found a sock containing money. Appellant was made to get out of the car and one of the officers saw one of his pockets was bulging and he patted him down for weapons. He was made to put the contents of his pocket on the hood of the car. There was considerable money in dimes, quarters and half-dollars. Appel-

lant was asked where he got the money and he said he won it in a poker game.

Both Eubanks and appellant were given their rights from a *Miranda* card issued to all police by the District Attorney's Office. Both said they understood their rights. They were arrested and carried to the station house. Both men refused to make a statement concerning the restaurant burglary or the possession of the property taken in the burglary. Appellant told the officer they had gotten all the information from him they were going to get.

Appellant had on shoes but no socks. He was shown the sock that was found in the restaurant but denied it was his. From the record:

"Q. Did he say anything else in regard to that sock?

"A. Later he asked if I was going to take his sock home with me."

Detective Sharp testified that he received from Officer Nelson at the Police Department one guitar, but he could not locate the serial number; a Lafayette radio, serial number 10194; a five-band radio, brand name "Best Ever"; a double barrel shotgun, serial number 61149; and a sock containing $26.00 in change; further, that he received from Officer Hines change amounting to $24.00, a total in money of $50.00. Photographs of all items removed from appellant's car, and the money received from the two officers, were made and introduced in evidence. All articles were released to Mr. Harbin with the exception of the shotgun shells and the socks. These latter articles were introduced in evidence. The shotgun shells referred to included one found in the restaurant and three removed from appellant's pockets.

Appellant makes two claims of reversible error: (1) That the state's evidence was nothing more or less than a "scintilla" to connect appellant with the crime charged, and (2) his motion to exclude the state's evidence should have been granted. We disagree with these contentions.

In *Kizziah v. State,* 42 Ala.App. 303, 162 So.2d 889, this court held:

" 'Prima facie evidence' means that which brings about a measure of proof which, unless it is contradictory or is contradicted by the defense, would support the jury's inferring the existence of one or more elements of a crime."

In *Tittle v. State,* 252 Ala. 377, 41 So.2d 295, the Supreme Court said:

"Prima facie evidence is 'evidence which suffices for the proof of a particular fact until contradicted or overcome by other evidence. * * * An inference or presumption of law, affirmative or negative of a fact, in the absence of proof, or until proof can be obtained or produced to overcome the inference.' Black's Law Dictionary, 3d Ed., p. 700.

"Ballentine's Law Dictionary defines the term as 'such evidence as, in judgment of law, is sufficient to establish the fact; and if not rebutted, remains sufficient for the purpose. In a legal sense, such prima facie evidence, in the absence of all controlling evidence, or discrediting circumstances, becomes conclusive of the fact.' P. 1009."

■ The police officers had probable cause to search the automobile they stopped for a traffic violation a few blocks from the scene and especially after finding shotgun shells in appellant's pockets. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

■ It is well settled that proof of the corpus delicti may be established by circumstantial evidence. *James v. State,* 22 Ala.App. 183, 113 So. 648; *Butler v. State,* 54 Ala.App. 468, 309 So.2d 505; *Hollenquest v. State,* 53 Ala.App. 501, 301 So.2d 264.

■ Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this court has no

right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value is for the jury. *Bolton v. State,* 21 Ala.App. 373, 108 So. 631; *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690.

■ Overruling defendant's motion to exclude the state's evidence was not reversible error where the evidence was sufficient to submit the question of guilt to the jury. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

The jury found appellant guilty under the third count of the indictment and because of appellant's past record, the court sentenced him to four years imprisonment.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.

Affirmed.

All the Judges concur.