Robbery; ten years.
This opinion which follows, except for the last twelve paragraphs, was prepared by a retired circuit judge on special assignment, but was not accepted by the majority of this court.
We have read and examined the record in the case and the facts detailed below are substantially correct and more than sufficient for the purpose of this opinion.
Appellant-defendant was convicted of robbery pursuant to an indictment therefor. *Page 765 
He entered a plea of not guilty. The jury fixed punishment at ten years imprisonment in the penitentiary. The trial court entered judgment in accordance with this verdict and denied appellant's motion for new trial. Hence, this appeal.
While on his way home from work in the late evening of October 18, 1974, the victim of the robbery, Irvin Reginald Darty, stopped by "Rose's Place" for some late night refreshment. Rose's Place was described by Darty as a "beer joint on old Highway 78, West (in Jefferson County)," and during the hour and a half he spent in this night spot, Darty consumed two beers while watching some other customers shoot pool. Darty left Rose's Place around 1:00 A.M. (October 19), and as he was walking across the parking lot to his pickup truck, he noticed an automobile that "nearly (had) a flat (tire)." As to what then transpired, we quote Darty's testimony from the record.
 "Q Did you talk with him (appellant) out there when you stopped to help them?
 "A When I got ready to leave the beer joint I looked up and they had nearly a flat on their car and I hollered back and told them that somebody had a flat, that I didn't know who it belonged to. They asked me would I follow them to the Allstate Club to make sure, you know, that they got over there.
 "MR. FOWLER: Your Honor we will object to that. I don't know who they is.
 "THE COURT: I don't either. Who are you talking about?
 "A I'm talking about this boy here (indicating defendant) and three more.
"THE COURT: Just say what he said please sir.
 "Q Did he (appellant) say anything in response to that?
"A I don't remember which one said anything.
"Q Where is the Allstate Club located?
 "A On new Seventy-eight highway." [Emphasis supplied].
Darty did not know the names of any of these individuals, but he recognized them as the persons he had just been watching shoot pool in Rose's Place. The four individuals (three men and a girl) drove off ahead of Darty in their automobile, and Darty quickly lost sight of them. After Darty had traveled about a half mile from Rose's Place down a "cutoff road" which led to "new highway Seventy-eight," he spotted the automobile parked on the shoulder of the road with its hood raised. Darty pulled in behind the parked automobile to render assistance and noticed that the three males (one of whom was positively identified at trial as the appellant) were standing outside of the car, and their female companion was seated inside. Again quoting Darty's trial testimony:
 "Q Did you have a conversation with any of them while you were in the pool hall (Rose's Place)?
"A Yes I did, but I don't remember it.
 "Q Did you have any conversation with them when you stopped at the car?
 "A I might have said a few words to them. We were all looking around the hood, you know. I got to looking around, you know, sort of suspicious, and when I turned I hit the ground.
"Q What caused you to hit the ground?
"A Somebody hit me in the back of the head.
"Q Do you know which one?
"A No I couldn't say for sure.
 "Q After you were hit in the back of the head and you hit the ground were you hit any further?
"A Yes sir. They just kept beating me.
"Q How many of the three males there beat on you?
 "A I couldn't say. After they hit me the first time I didn't know much more.
"Q Were you completely out?
 "A Yes sir. When I woke up everything was gone and I was laying on the highway.
"Q What kind of shoes did you have on?
"A Slippers. My boots were laying in the truck.
 "Q When you woke up was there anything missing from your personal effects? *Page 766 
"A My watch and my shoes.
"Q What kind of watch?
"A Timex. Little old cheap watch.
"Q What was the value of it?
 "A About eighteen dollars, I guess. Somewhere along there.
 "Q Were you able to tell when anybody got the watch, were you aware of it?
 "A I didn't know nothing about it til I woke up."
[Emphasis supplied].
Also taken during the robbery was Darty's 1972 GMC pickup, his billfold containing four dollars, his boots, and paycheck. Darty sustained severe injuries around the head and face as a result of this assault, but was able to walk about a mile to the "Allstate Club" where he was then taken to his home by a woman and small boy. Several days after the incident in question, Darty learned from the proprietor of Rose's Place that the names of the individuals whom he watched shoot pool and whom he alleged later robbed him were, Wayne Stewart (appellant), Joe Richards, Donnie Stewart, and Patty Stewart.
Appellant presented an alibi defense and through the testimonies of himself, his sister, and his brother-in-law, he sought to establish that on the night in question he was in Bessemer at his sister's home repairing his automobile. Appellant admitted that he knew Joe Richards and Donnie Stewart. In fact, Donnie Stewart was appellant's brother, and Joe Richards was his nephew. Appellant also stated he had been in Rose's Place on several occasions, but he emphatically denied that he was there on the night of October 18, 1974.
 I
Appellant contends that the trial court erred in overruling his motion for a new trial which challenged the sufficiency of the evidence. He asserts that the evidence presented by the State proved no more than that he was present at the scene of this roadside robbery and had the "opportunity to commit a crime."
It is well settled that corpus delicti as well as an appellant's guilty agency may be established by circumstantial evidence. James v. State, 22 Ala. App. 183, 113 So. 648; Butlerv. State, 54 Ala. App. 468, 309 So.2d 505; Stiles v. State, Ala.Cr.App., 315 So.2d 609; Howell v. State, Ala.Cr.App.,339 So.2d 138; Chatom v. State, Ala.Cr.App., 348 So.2d 828.
Also, it is well settled where legal evidence exists, from which the jury can by fair inference find the defendant guilty, this court has no right to disturb the verdict. Whether such evidence exists is a question of law, but its weight and probative value is for the jury. Bolton v. State, 21 Ala. App. 373,108 So. 631; Haggler v. State, 49 Ala. App. 259,270 So.2d 690.
Overruling the appellant's motion for a new trial was not error because a sufficiency of evidence existed upon which to submit the case to the jury. Young v. State, 283 Ala. 676,220 So.2d 343.
In the instant case, the victim, Darty, spent approximately an hour and a half in Rose's Place, during which time he had a conversation with the group that he saw in the parking lot. In his testimony concerning the events in the parking lot, Darty said when he "hollered back and told them that somebody had a flat," the appellant and three more asked him to follow them to the Allstate Club, to which he agreed. During the trial, he indicated that one of the group was the defendant by saying "I'm talking about this boy here, (indicating the defendant) and three more."
Darty testified that when they left the parking lot, the group was in front of him but he lost sight of them. He said that he was on a "cut-off road" leading to "new highway Seventy-eight" and had gone about one-half mile when he saw their car sitting on the side of the road with its hood raised. He identified the car as being a "61 or 62" Falcon which was white in color with black stripes down the back. He said he pulled up behind the car and the three males were out of the car. According to the victim, when he stopped, he said he might have said a few words to them but they were all looking around the hood. *Page 767 
Darty testified that when he turned, somebody hit him on the head. He said he could not say for sure who it was but they continued to beat him after he had fallen to the ground.
During the trial he identified the defendant as one of the individuals present at the time he was beaten and robbed. Before concluding his testimony (in chief), Darty acknowledged that he was one-hundred percent positive that the appellant was one of the ones who robbed him. From the record:
 "Q Mr. Darty, I would like to ask you this question and I would like for you to keep in mind the fact this man is charged with robbery. Are you positive that's the man, 100 percent positive?
"A Yes, sir.
 "Q Look over here at him. Are you positive that's the man?
"A Yes, sir."
In Jones v. State, 174 Ala. 53, 57 So. 31, the Supreme Court of Alabama stated:
 "`When by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, . . the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case.' Morris v. State, 146 Ala. 66, 41 So. 274."
The Alabama Supreme Court further observed in Jones v. State, supra, that:
 "Aid and abet `comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford's Case, 59 Ala. 106; Tally's Case, 102 Ala. 25
et seq., 15 So. 722."
The evidence in this case warranted a finding of concerted action on the part of the appellant and the others going to the remote place where the robbery was committed. They were all in a position to render assistance in the commission of this crime. Legal evidence existed from which the jury could by fair inference find that the appellant participated in this robbery. Under these circumstances, this court has no right to disturb the verdict. The question whether this evidence existed was a question of law. The weight and probative value was for the jury's consideration. Haggler v. State, supra.
We are of the opinion that the facts and circumstances produced at trial, together with the inferences to be drawn therefrom, were sufficient to warrant the jury's verdict and to sustain the judgment of conviction.
No error appearing in the record, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur. *Page 768