William Ken McFarland was charged with and convicted of robbery in the third degree, in violation of § 13A-8-43, Code of Alabama 1975. He was sentenced, as a habitual offender, to 21 years' imprisonment. He presents three issues for review on this appeal.
 I.
First, appellant contends that the trial court erred to reversal in admitting the *Page 1251 
security videotape of the robbery into evidence. Specifically, appellant presents the following arguments alleging error: (1) the videotape, recorded by two employees of Sears, Roebuck and Company, contains a lapse in time from when one employee was controlling the recording device to when the second employee took over the recording controls; (2) the tape shown to the jury may not have been the tape actually recorded by the two employees, but may have been an edited compilation of that original tape; (3) different recording devices may have been used by the two employees; (4) the use of the videotape is a violation of his Fifth Amendment privilege against self-incrimination; (5) "the tape and testimony alludes to verbal exchanges between the parties, yet there is no audible portions on the videotape"; and (6) the videotape was superfluous, misleading, and prejudicial, because portions of the tape were unintelligible and contained scenes of other people doing other things.
Recently, this court in Molina v. State, 533 So.2d 701, 712
(Ala.Cr.App. 1988), cert denied, 489 U.S. 1086, 109 S.Ct. 1547,103 L.Ed.2d 851 (1989), adopted the
 " 'better reasoned rule' that 'video recordings are admissible on the same basis as other types of photographic evidence, i.e., admissible when verified by some witness who can state that they are a reliable reproduction of the recorded picture and sound.' C. Scott, Photographic Evidence, supra, § 1297 at 98 n. 42.20 (1987 Pocket Part)."
The court also emphasized the following:
 " 'The motion picture does not of itself prove an actual occurrence but the thing reproduced must be established by the testimony of witnesses. The motion picture as exhibited to the jury is the pictorial communication of the witness' testimony as is used to convey the observations of the witness to the jury more fully and accurately than the witness can convey them verbally. The picture is not admissible unless a witness testifies that the picture as exhibited accurately reproduces the objects or actions which he observed.' UAW-CIO v. Russell, 264 Ala. [456,] 470, 88 So.2d [175,] 186 (emphasis added [, citations omitted])."
Id. at 709-10.
In the instant case, both of the Sears employees involved in recording the videotape testified concerning the events that they saw on the security monitors. Both also testified that the videotape was an accurate reproduction of what appeared on the security monitors. Therefore, the videotape was properly admitted by the trial judge.
Appellant's arguments that (1) the time lapse involved when one employee allowed the second employee to take control of the recording device, (2) the tape shown to the jury was possibly an edited compilation of the original tape; (3) different recording devices may have been used by the two employees; and (4) "the tape and testimony alludes to verbal exchanges between the parties, yet there is no audible portions on the videotape" are subjects that must be left for the jury. See UAW-CIO v.Russell, 264 Ala. 456, 470, 88 So.2d 175, 186 (1956), aff'd,356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958). "These matters affect the credibility and the weight to be given the picture by the jury." Id. Therefore, they are beyond our review.
Appellant's argument that the videotape is superfluous, misleading, and prejudicial because portions of it are allegedly unintelligible and contain events concerning people other than the appellant is "a matter for the trial court in the exercise of his sound discretion to determine whether the picture will aid the jury or tend to confuse or prejudice the jury," UAW-CIO, 264 Ala. at 470, 88 So.2d at 187 (citations omitted). The trial judge's exercise of discretion is reviewed by searching for a gross abuse of his discretion, id.,264 Ala. at 470, 88 So.2d at 186. The record indicates that the trial judge knew that the videotape was a continuous taping, containing no breaks in it, and that the segment to be shown to the jury began with that part at which a witness could identify appellant and ended at the point where appellant actually left the store. Additionally, the trial judge stated that he was basing his *Page 1252 
decision to admit the videotape into evidence on the testimony that was elicited with references to the videotape. We cannot find that the trial judge's actions were a gross abuse of his discretion.
Appellant's contention that the videotape violates his privilege against self-incrimination is lacking in merit. Appellant does not point out how, or in what way, there is an alleged violation of his privilege, other than by stating that the videotape contains frames in which he is portrayed in the Sears store. The Fifth Amendment privilege "does not protect a suspect from being compelled by the State to produce 'real or physical evidence.' [Schmerber v. California, 384 U.S. 757,] 764 [86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966)]. Rather, the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.' Id. at 761 [86 S.Ct. at 1830]." Pennsylvania v. Muniz, ___ U.S. ___,110 S.Ct. 2638, 2643, 110 L.Ed.2d 528 (1990). We conclude that those portions of the videotape taken by surveillance cameras in which appellant appears are real or physical evidence, not testimonial or communicative evidence. Those portions do not, " 'explicitly or implicitly, relate a factual assertion or disclose information' " as is required for the evidence to be testimonial in nature, id. (quoting, Doe v. United States,487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988)). Based on this reasoning, we conclude that appellant was not forced to testify in violation of his Fifth Amendment privilege against self-incrimination. The videotape was properly admitted into evidence.
 II.
Next, appellant contends that the trial judge erred in denying his motion to exclude the evidence and to enter a judgment of acquittal on the charged offense of robbery in the third degree. Essentially, appellant suggests that the trial judge should have granted his motion for acquittal and should have instructed the jury only on the lesser included offense of theft of property in the third degree. Appellant concedes that the evidence produced by the state supports a charge of third degree theft. However, he contends that if any force was threatened or was actually used, that force came subsequent to the completion of the theft, and, thus, was not threatened or used with the intent to compel acquiescence to the taking of or escaping with the property, as required by § 13A-8-43. We disagree.
The state produced evidence from which the jury could have found the following facts: On December 4, 1988, Ted Hacknee, a security officer for Sears, Roebuck and Company, observed appellant possibly shoplift a Craftsman screwdriver. Hacknee's observations, for the most part, were made by the use of security cameras situated throughout the store. Since Hacknee did not see appellant purchase the screwdriver, but believed he had placed it on his person, he followed appellant out of the Sears store and into the hallway of the shopping mall. Approximately 60 feet from the Sears exit, but still within the mall, Hacknee caught up with appellant in front of a Revco store. When Hacknee showed appellant his identification indicating that Hacknee was a Sears security person, appellant warned him to stay away. When Hacknee stepped closer, appellant pulled a knife from his right front pocket, opened the blade, and pointed the knife at him. Hacknee stepped back. A woman, unknown to Hacknee, approached and told him to leave appellant alone. Appellant then turned his back to Hacknee, closed the blade of the knife, and walked into the Revco store. Hacknee followed appellant, but was able to observe him only from an adjacent aisle. Inside the Revco store, appellant stopped at a counter; however, Hacknee could not determine why he stopped. When appellant was arrested, no Sears screwdriver was found on appellant, but such a screwdriver was recovered from a counter in the Revco store, approximately in the same location where appellant had stopped before he left the Revco store.
The cases that appellant relies upon in his brief to support his argument are distinguishable: *Page 1253 Ex parte Sapp, 497 So.2d 550 (Ala. 1986) (wherein the defendant, having successfully completed the theft unnoticed, returned to the store minutes later and then used force to escape after being questioned by store employees); Carlisle v.State, 484 So.2d 540 (Ala.Cr.App. 1985) (wherein the defendant used force to scare the victim away and then proceeded to steal his car); Casher v. State, 469 So.2d 679 (Ala.Cr.App. 1985) (wherein the defendant used force only to effect an escape after the stolen property had been recovered by its owner). In the instant case, appellant was constantly under surveillance. He was never seen purchasing a screwdriver. When he left the Sears store and was confronted by Hacknee, he used force, by presenting a knife, to ensure his escape with the property, which was subsequently found in the Revco store.
Appellate courts are limited in reviewing a trial court's denial of a motion for judgment of acquittal grounded on insufficiency. The standard of review is whether legal evidence was presented to the jury from which the jury could have, by reasonable inference, found the defendant guilty. Stewart v.State, 350 So.2d 764, 766 (Ala.Cr.App. 1977). It is not within the province of this court to substitute its judgment in place of the jury's decision. See id. The probative value and weight given such evidence is solely for the jury. Id.
There was ample legal evidence presented from which the jury could have reasonably inferred that appellant had threatened the use of force to accomplish the theft. Ted Hacknee testified that, after following appellant from the Sears store and confronting him, appellant drew a knife and pointed it at Hacknee. Whether the jury believed his testimony, and the weight the jury placed on it, are beyond this court's review, but the evidence was legally sufficient to support the trial court's submission of the case to the jury.
 III.
Last, appellant contends that his conviction should be reversed because, he argues: (1) his trial counsel was ineffective for not pursuing the defense of mental disease or defect, (2) the trial judge erred in denying his motion for a continuance of his sentencing hearing, and (3) the trial judge erred in denying his motion for a new trial. Appellant's arguments will be addressed in the above order.
The standard used in deciding claims of ineffective assistance of counsel is set out in Strickland v. Washington,466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."
Assuming that appellant is able to show that his trial counsel was deficient, because he committed unreasonable errors (the first prong), appellant
 "must show that [those errors] actually had an adverse effect on the defense.
 "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . ."
Id. at 693, 104 S.Ct. at 2067. (citations omitted).
 "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result *Page 1254 
of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
Id. at 694, 104 S.Ct. at 2068.
To succeed with the affirmative defense of not guilty by reason of mental disease or defect, appellant must show that, at the time of the acts constituting the offense, he was, as a result of severe mental disease or defect, unable to appreciate the nature and quality or wrongfulness of his acts. § 13A-3-1. A " '[s]evere mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." Id. "Unusual or weird behavior alone cannot be equated with . . . insanity." Moss v. State,536 So.2d 129, 135 (Ala.Cr.App. 1988) (quoting Meredith v. State,370 So.2d 1075, 1078 (Ala.Cr.App.), cert. denied,370 So.2d 1079 (Ala. 1979)). In order to overcome the presumption of sanity, a defendant must prove by clear and convincing evidence that he was, in fact, suffering from a severe mental disease or defect at the time the crime was committed. Id. See also Wherryv. State, 402 So.2d 1130, 1132 (Ala.Cr.App. 1981).
The record contains no evidence that appellant suffered from a mental defect or disease during the time when the instant crime occurred. Appellant relies on a determination made by a psychiatrist in 1974 that he was insane at that time. However, appellant concedes that approximately one year later he was released from Bryce Hospital after he was found to be competent. Appellant further relies upon two previous unrelated criminal court proceedings in which he entered pleas of not guilty and not guilty by reason of insanity. He seems to argue that such pleadings should have alerted his instant trial counsel to investigate this approach more thoroughly. However, appellant fails to point out that in both cases he withdrew those pleas and pleaded guilty. Other events and conditions contained in the record are as follows: At the time of the crime, appellant suffered from epilepsy, but failed to take his medication for this condition. He suffered from memory loss, also during this time, as to what he was doing or where he was going. He was diagnosed as suffering from hydrocephalus (an excess amount of spinal fluid in the cranial cavity) by a doctor in 1989. Appellant also had "erratic" brain waves in October 1989. Appellant's mother said that he received brain damage in a car accident and that, at the age of 17 years, appellant's father severely beat him about the head. She also stated that, on one occasion, she found in his room a shirt "stuffed like a body's head" and found many articles of women's clothing. Appellant occasionally dressed in women's clothing. While in his mid-thirties, appellant and his mother were required to move from their home because appellant threw rocks at his neighbor's trailers. While this evidence may reflect the fact that appellant suffers, or has suffered from, different ailments and has occasionally indulged in unusual or weird behavior, it does not clearly and convincingly indicate that, at the time of the instant crime, he was suffering from a mental disease or defect.
After carefully reviewing the entire record, we conclude that appellant has not shown that there is a reasonable probability that this case would have been determined differently by the jury had his instant trial counsel pursued the defense of not guilty by reason of mental disease or defect. Appellant has failed to prove that his counsel was ineffective.
Appellant also argues that the trial judge erred in denying his motion for a continuance of his sentencing hearing. The disposition of a motion for continuance is addressed to the sound discretion of the trial judge. Johnson v. State,542 So.2d 341, 343 (Ala.Cr.App. 1989). The denial of a motion for continuance will not be disturbed unless there has been a gross abuse of discretion by the trial judge. Id. "It is within the sound discretion of the trial judge to deny a motion for continuance for the purpose of obtaining further study and evaluation of a defendant." Carroll v. State, 445 So.2d 952,954 (Ala.Cr.App. 1983) (citations omitted). We find no evidence in *Page 1255 
the record reflecting an abuse by the trial judge in the exercise of his discretion.
Appellant's argument that the trial judge erred in denying his motion for a new trial is not supported by the record. At the hearing on the motion for a new trial, appellant argued that his mental history warranted a new trial, because, he argued, the jury might have returned a different verdict if it had been presented with this evidence. However, as we stated earlier regarding appellant's ineffective-assistance-of-counsel claim, we cannot find that this additional evidence would have produced a verdict different from that returned by the jury. The grant or denial of a motion for new trial is addressed to the discretion of the trial judge, "and in reviewing such a decision, this court will indulge every presumption in favor of the correctness thereof." Brownlee v. State, 545 So.2d 151, 164
(Ala.Cr.App. 1988), aff'd, 545 So.2d 166 (Ala. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989) (citations omitted). We find no evidence in the record of abuse by the trial judge in the exercise of his discretion.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.