WISE, Judge.
The appellant, Gary Thornton, was convicted of third-degree burglary, a violation of § 13A-7-7, Ala.Code 1975.[1] The trial court sentenced Thornton to 3 years’ imprisonment; that sentence was split and he was ordered to serve 30 days in jail and the remainder on probation. Thornton was also fined $500 and was ordered to pay a $500 assessment to the crime victims compensation fund. This appeal follows.
On appeal, Thornton contends that the trial court erred in denying his motion for a judgment of acquittal and his motion for a new trial because, he claims, the State failed to prove a prima facie case. Specifically, Thornton argues that the State failed to prove the criminal intent required to support his third-degree-burglary conviction.
It is well settled that “[a]ppellate courts are limited in reviewing a trial court’s denial of a motion for judgment of acquittal grounded on insufficiency.” McFarland v. State, 581 So.2d 1249, 1253 (Ala.Crim.App.1991). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Crim.App.1978). The appellate court, in reviewing the denial of a judgment of acquittal, will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Crim.App.1983). In determining the sufficiency of the evidence to support the verdict of the jury and the judgment of the trial court, we view the evidence in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
The evidence presented at trial shows the following. On October 13, 2000, Thornton, Mildred Sims, and Salafas Ivey were sent to Abbeville, Alabama, by Willie James Hayes, the owner of Global Enterprises, to perform lawn maintenance and cleaning duties at a house on which HUD had foreclosed. Global Enterprises, a cleaning business located in Marianna, Florida, did subcontracting work for Citi-west, an Atlanta-based company that had a contract with HUD to clean, manage, and market its foreclosed properties. Global Enterprises was issued a work order by Citiwest to perform yard maintenance and cleaning duties at a property listed as Route 3, Box 619, 436 Lakeview Drive, Abbeville, Alabama. Upon their arrival in Abbeville, Thornton, Sims, and Ivey, who were unfamiliar with the area, stopped a local police officer, Ronnie Moody, and asked him for directions to Lakeview Drive. Officer Moody informed the cleaning crew that he knew Lakeview Drive was in the Backwater area but he did not specifically know where Lakeview Drive was located. He directed them to the Backwater area and advised them to ask for further directions from that point. At trial, Officer Moody verified that he had been approached by the group and that he told them Lakeview Drive was located somewhere around the Backwater area. *735 The cleaning crew then drove to the Backwater area and stopped at Mid-Lake Bait and Tackle, a fishing-supplies store, again asking for directions to 436 Lakeview Drive; unfortunately, the sales clerk did not know where that address was located.
The cleaning crew next stopped a mail carrier, Edward Golden, and asked him for directions. Sims, a codefendant, stated that Golden told her where Lakeview Drive was located and said that there was a HUD house at the end of Lakeview Drive. Golden testified that he informed the cleaning crew that 436 Lakeview Drive was not on his postal route and that he was not familiar with the address. He stated that he did inform them that there was a HUD house in Sunset Acres, but that that house was on the corner of Hill-crest and Laurel.
Thornton, Sims, and Ivey then drove to Sunset Acres, where Golden told them a HUD house was located; they spotted a house with overgrown grass and unkept hedges that appeared to have been abandoned. However, the house was not at the corner of Hillcrest and Laurel as the mail carrier had informed them; instead, it was on Lakeview Drive. There were no address numbers on the house, curb, or mailbox. According to Sims, she attempted to enter the front door with a key that Hayes provided, but was unable to open the door because a key had been broken off in the lock. Ivey entered the house through a window that was cracked open and noticed that the house was furnished. Fearing that they might be in the wrong house, Sims telephoned Hayes. After contacting Citiwest, Hayes determined that the group was at the right address and told Sims to begin the work. Thornton mowed the lawn and trimmed the hedges. The trio then began cleaning out the house, bagging up small items for disposal. During this time, they removed household cleaning items, linens, pots, pans and a videocassette recorder. Because the cleaning crew had no way of storing or transporting the remaining household contents, they returned to Marianna, Florida.
On October 20, 2000, Thornton, Sims, and Ivey returned to Abbeville with Hayes to finish cleaning out the house. In order to gain entry, Hayes broke a window and pried open the door. The group then loaded the contents of the house onto a Global Enterprises truck. The home belonged to Henry Hart; it was not the house on which HUD had foreclosed. Sims and Hayes testified that the group did not go to Hart’s home to burglarize it; rather, they mistakenly entered the wrong home pursuant to a work order from Citiwest to clean out a HUD foreclosure.
Citiwest employees Yolanda Sharpe, quality control manager, and Danny Till-ery, property inspector, presented testimony concerning their contract with HUD. Sharpe testified that Citiwest had won a contract with HUD to manage and market HUD foreclosures. She stated that Citi-west was responsible for cleaning out the property and preparing it for resale. Sharpe testified that Global Enterprises, a Citiwest subcontractor, was given a work order for the Abbeville property with instructions to clean everything out of the house and to maintain the lawn. Sharpe and Tillery testified that at the time of the incident, HUD policies allowed property managers/subcontractors to enter a foreclosed house in any manner necessary and that any items remaining in the house were to be removed because the items were considered abandoned property.[2] *736 Both stated that it was not uncommon for personal property, furniture, even vehicles, to be left behind when HUD foreclosed on a home. Sharpe testified that when a work order was issued to clean up a house, any items remaining in the home were considered debris, and the clean-up crew could do whatever they wanted with the items. Tillery testified that items left in the homes are to be removed during the cleanup and that the items can be hauled off, thrown away, or taken home with the cleaning crew. He also stated that there are incidences where inspectors, as well as clean-up crews, go to the wrong address.
The defense also presented testimony from Henry County engineer Chris Champion. Champion testified that in 2000 there were two Lakeview Drives located in Abbeville. One was located in the Sunset Acres subdivision and the other in the gated community of Riverview Forest. He stated, that based on county maps, the Lakeview Drive addresses in Sunset Acres ranged from 260 to 480 while the Lakeview Drive addresses in Riverview Forest went from 100 to 207.
Henry Hart, the victim, testified that he owns a lake house located at 480 Lakeview Drive. He stated that on October 18, 2000, he went by to check on the lake house after work. He immediately noticed that the lawn had been cut, the hedges had been trimmed, and several of the screens had been removed from the windows. Hart testified that he observed several marks by the door lock. When he entered the house he noticed that the cupboards were open and that a series of bags were filled with items from the cupboards. Hart determined that a number of kitchen items were missing from the cupboards. He returned to the house on October 20, 2000, to make an inventory of the missing items in order to file an insurance claim and police report. After preparing the list, Hart stated that he left the house and returned an hour later to find Thornton, Sims, Ivey, and Hayes removing the furniture from his home. He drove to a nearby store and notified the police, who arrived on the scene and arrested the group. During cross-examination, Hart stated that he was satisfied that Hayes owned Global Enterprises, that Global Enterprises was a subcontractor for Citiwest, that Citiwest hires individuals to clean out HUD housing, and that Hayes was in Henry County to clean out a HUD house. He further acknowledged that he and his wife had written a letter to Congressman Terry Everett complaining about the incident and the lack of HUD regulations; in the letter they stated that Thornton and his codefendants were “unfortunately at the wrong address.” (R. 99-100). The jury convicted Thornton on count I (the initial entry occurring on October 13, 2000) and acquitted him as to Count II (the October 20, 2000, entry).
Section 13A-7~7(a), Ala.Code 1975, sets out the elements of the offense of burglary in the third degree: “A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” Thus, in order to convict Thornton on the burglary charge, the State had to prove that Thornton knowingly entered and unlawfully remained in a building with intent to commit a crime. In Ex parte Mitchell, 723 So.2d 14, 15 (Ala.1998), the Alabama Supreme Court held:
“Rule 20.1(a), Ala. R.Crim. P., requires that a motion for a judgment of acquittal be granted as to any offense ‘for which the evidence is insufficient to support a finding of guilty beyond a reasonable doubt.’ One commentator explains: ‘There must be substantial evidence tending to prove all the elements of the charge, and the burden is on the *737 State to prove beyond a reasonable doubt that the crime has been committed and that the defendant was the person who committed it.’ H. Maddox, Alabama Rules of Criminal Procedure § 20.1, at 734 (2d ed. 1994).”
Having carefully considered the record, including the testimony, we conclude that the State failed to carry its burden to prove beyond a reasonable doubt that Thornton knowingly entered Hart’s house with the intent to commit a crime therein and that the trial court, therefore, erred in denying Thornton’s motion for a judgment of acquittal.
Based on the foregoing, the judgment of the trial court is reversed and a judgment is rendered for Thornton.
REVERSED AND JUDGMENT RENDERED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.

. Thornton was indicted on two counts of burglary in the third degree. His first trial ended in a hung jury and a mistrial was declared. At the conclusion of the second trial, the jury returned a verdict of guilty on count I of the indictment and not guilty on count II.

. Testimony was presented to the effect that HUD has changed its policies as a result of this incident.